**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prosight–Syndicate 1110 At Lloyd's, <br><br> Plaintiff, <br><br> vs. <br><br> American Builders and Developers LLC, <br><br> Defendant. | No. CV-17-04662-PHX-SPL <br><br> **ORDER** |

Plaintiff Prosight–Syndicate 1110 At Lloyd's (the "Plaintiff") has filed suit seeking declaratory judgment to determine its liability under an insurance contract. (Doc. 1) Counterclaimants Florenciano Axinicuilteco and Maria Virginia Huizache (together, the "Claimants") filed a motion for summary judgment (the "Motion") seeking summary judgment in their favor on the Plaintiff's declaratory judgment claim. (Doc. 74) The Motion was fully briefed on September 20, 2018.[1] (Doc. 88, 97) The Court's ruling is as follows.

**I. Background**[2]

The Plaintiff issued an owner controlled insurance policy (the "Policy"), often referred to as a wrap policy, to defendant American Builders and Developers, LLC ("ABD"). (Doc. 90 at 4) Wrap policies allow for a general contractor to purchase an

---
[1] The Court notes Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Claimants' Motion for Summary Judgment. (Doc. 100) This motion will be granted, and the Court has considered Plaintiff's sur-reply in its analysis.
[2] Unless noted, the following facts are undisputed.

insurance policy for a construction project and enroll multiple subcontractors for insurance coverage under the policy. (Doc. 90 at 5) ABD's wrap policy was originally effective from March 31, 2013 to March 31, 2016, and the Policy covered two separate construction sites, the Trio Condominium property located in Scottsdale, Arizona (the "Trio Property") and the Clearwater Hills property located in Paradise Valley, Arizona (the "PV Property"). (Doc. 90 at 4, 8) ABD enrolled subcontractor Diamond House Painting, LLC ("DHP") in the Policy in November 2014. (Doc. 90 at 9)

In January 2016, one of DHP's employees was killed in an incident at the Trio Property. (Doc. 90 at 2, 4) The decedent's parents Maria Virginia Huizache and Florenciano Axinicuilteco brought a wrongful death action (the "Wrongful Death Lawsuit") against ABD, among others, in Arizona state court. (Doc. 90 at 2) The Plaintiff initiated this lawsuit for declaratory judgment seeking a determination that it is not liable to indemnify ABD for any damages awarded pursuant to the Wrongful Death Lawsuit. (Doc. 1) On August 6, 2018, the Claimants filed the Motion arguing that they were entitled to summary judgment because DHP was covered under the Policy at the time of the incident giving rise to the Wrongful Death Lawsuit. (Doc. 74)

**II.     Legal Standard**

A court shall grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. If the movant is able to do such, the burden then shifts to the non-movant who, "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

### III. Analysis

The Claimants argue that they are entitled to summary judgment on Plaintiff's claim for declaratory judgment because (i) DHP was "enrolled" under the terms of the Policy through the Certificate of Enrollment received from Policy administrator Paladin Risk Management; (ii) the incident giving rise to the Wrongful Death Lawsuit was covered under the Policy; and (iii) the Plaintiff wrongly denied coverage to ABD under the terms of the Policy. (Doc. 74 at 6–9) In response, Prosight argues that the Certificate of Enrollment provided to DHP only covered its work on the PV Property and not the Trio Property where the incident occurred; therefore, DHP was not covered under the Policy for any work taking place at the Trio Property at the time the incident occurred. (Doc. 88 at 13–14)

First, the Court finds that there are no genuine issues of material fact present in this case. The primary issues before the Court are rooted in whether the terms of the Policy covered DHP at the time of the incident giving rise to the Wrongful Death Lawsuit. Interpretation of an insurance contract presents questions of law; if the contractual language in an insurance policy is clear, courts will afford it its plain and ordinary meaning and apply it as written. *Stratton v. Am. Med. Sec., Inc.*, 2008 WL 2039313, at *5 (D. Ariz. May 12, 2008) (*citing Liberty Insurance Underwriters, Inc. v. Weitz Company*, LLC, 158 P.3d 209, 212 (Ariz. Ct. App. 2007)).

Plaintiff argues that DHP was not covered under the Policy because DHP did not meet the enrollment requirements necessary to be covered for work performed at both the Trio Property and the PV Property. Specifically, Plaintiff argues that the Certificate of Enrollment provided to DHP only covered its enrollment requirements for the PV Property,

and, in reality, Paladin Risk Management ("Paladin") treated the properties separately. The Court finds that the manner in which "Project" is defined under the Policy covered both the Trio Property and the PV Property. At every opportunity, the Policy refers to the sites associated with both the PV Property and the Trio Property as a single "Project." (Doc. 1-3 at 23, 27, 81, 83, 104) Specifically, "Project" is defined as encompassing, "4 three unit three story wood townhouse building valued at $1,225,000 each building. Each Townhouse unit is valued at $375,000. Buildings are located at 4816 N. Woodmere Fairway, Scottsdale, AZ. 1 Single family Dwelling Located at 7537 N Lakeside Ln, Paradise Valley, AZ 85253 valued at $1,400,000. Estimated total project sales price $6,500,000. Estimated total project Construction Costs $3,750,000. Estimated project construction term 24 months," throughout the entirety of the Policy. (Doc. 1 at 7) So while Plaintiff argues that the PV Property and the Trio Property were two separate projects, the terms of the Policy demonstrate that both properties were combined under a single definition to make up one "Project" to which the terms of the Policy applied.

There is absolutely nothing present in the terms of the Policy demonstrating that the two properties were to be treated separately. In fact, the terms of the Policy demonstrate that the single contract was used to insure both the PV Property and the Trio Property. Plaintiff's argument that the separate physical locations and ownership of the two properties evidences that the properties were separate under the terms of the Policy ignores the unambiguous and prevalent manner in which "Project" was described throughout the Policy. (Doc. 101 at 4) In the event that the parties intended for each property to be treated separately under the Policy, they could have mentioned it at least once in the more than 100 pages of policy terms.

The Court finds Paladin's bookkeeping procedures to be irrelevant to the issues at hand. The clear terms of the Policy state that an independent contractor is enrolled under the Policy upon the earlier of "the execution of a subcontractor contract or agreement covering work that is part of the Project . . ." or when Paladin "issued the independent contractor a Certificate of Enrollment in the Program. . . ." (Doc. 1-3 at 74) It is undisputed

that DHP received its Certificate of Enrollment in November 2014. (Doc. 90 at 9) At no point do the terms of the Policy distinguish between the PV Property or the Trio Property. Furthermore, the terms of the Policy never state that independent contractors need to receive separate certificates for each property identified as "the Project." Instead, the "Project" defined term is recycled in this section to refer to both the PV Property and the Trio Property, consistent with the entirety of the contract. Accordingly, Plaintiff's arguments against summary judgment on this basis must fail. The Court finds that DHP was covered under the Policy at the time of the incident, and Plaintiff is obligated to indemnify ABD under the terms of the Policy. The Court finds that the Claimants are entitled to summary judgment on this issue, and the Motion will be granted.

Accordingly,

**IT IS ORDERED:**

1. That Counterclaimants' Motion for Summary Judgment (Doc. 74) is **granted**;
2. That Plaintiff is obligated to defend or indemnify ABD with respect to any of the claims in the Wrongful Death Lawsuit pursuant to the terms, conditions and exclusions of the Policy; and
3. That Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Claimants' Motion for Summary Judgment (Doc. 100) is **granted**.

Dated this 12th day of February, 2019.

Honorable Steven P. Logan
United States District Judge